b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| MCKINLEY BATES III, Plaintiff | CIVIL DOCKET NO. 1:20-CV-00036 |
|---|---|
| VERSUS | JUDGE DRELL |
| LANE NORMAND, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

MEMORANDUM ORDER

Before the Court is a Motion to Dismiss (ECF No. 9) filed by Defendant Lane Normand ("Normand"), and a Motion to Amend/Correct Complaint (ECF No. 13) filed by Plaintiff McKinley Bates III ("Bates") (ECF 13). Because Defendants will not be prejudiced by the amendment, Bates's Motion to Amend/Correct Complain (ECF No. 13) is GRANTED. Further, substantive evidence has been introduced in opposition to the Motion. Thus, Normand's Motion to Dismiss (ECF No. 9) is DENIED AS MOOT.

I. Background

Bates filed this lawsuit under 42 U.S.C. § 1983. ECF Nos. 1, 5. The named Defendant is Normand, a Louisiana Probation and Parole Officer. Bates alleges that Normand fabricated evidence and lied to have Bates falsely arrested and charged. Bates also contends Normand lied on a search warrant application to have Bates's father's home searched, and used excessive force against Bates. Bates seeks: (1) monetary damages (for false arrest, use of fabricated evidence to obtain a

search warrant and to arrest Bates, emotional distress, physical pain and suffering, and false imprisonment); (2) the attorney fees associated with the criminal charges that were dropped; and (3) punitive damages.

Normand filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 9). Bates opposed that motion with evidence (ECF No. 12), including affidavits, videos, and state court records. Bates then filed a Motion to Amend/Correct Complaint (ECF No. 13), which Normand also opposes (ECF No. 16).

II. Law and Analysis

    A. Allegations in Bates's first Amended Complaint.

Bates alleges that, in October 2018, while he was outside at his father's house, he was "rushed" and chased by several police officers and Normand. ECF No. 5 at ¶¶ 7-9. After running initially, Bates stopped and surrendered. ECF No. 5 at ¶ 9. Bates contends that, while making the arrest, Normand punched Bates repeatedly about the head and back. ECF No. 5 at ¶ 10. After Bates was handcuffed, Normand slammed Bates into a fence pole. ECF No. 5 at ¶ 11. Bates alleges Normand then searched the carport without a warrant. ECF No. 5 at ¶ 12.

Bates contends that Normand wrote a police report, falsely stating he smelled marijuana on the carport where Bates had been sitting; saw Bates pull a plastic bag from his pocket and throw it before he ran; saw marijuana sitting in plain view on the table where Bates had been sitting in the carport and on the washer in the carport; and found the baggie Bates had thrown, which was full of "Xanax bars." Normand found mail in Bates's vehicle that was addressed to Bates's

father's house. Normand's statements formed the basis of a search warrant application for Bates's father's home (Normand alleged Bates was living with his father). The search warrant was executed by officers and Normand. Money and guns were seized from Bates's father's home. Bates was charged with possession with intent to distribute Schedule IV drugs, possession of marijuana, possession of drug paraphernalia, possession of a firearm by a convicted felon, and resisting an officer.

According to Bates, security cameras outside Bates's father's home captured the incident on video and showed: Bates running away from the police without discarding anything; and Normand placing bags of marijuana in the carport "in plain view." The video also revealed there were no drugs or drug paraphernalia on the ground.

After the prosecutor viewed the video, the drug and gun charges against Normand were dismissed. The prosecutor later dismissed the remaining charge of resisting an officer.

B. <u>Bates's Motion to Amend/Correct Complaint (ECF No. 13) is granted.</u>

Bates filed a Motion to Amend/Correct Complaint to add Lt. Cowan as a Defendant, and to add state law causes of action for battery and malicious prosecution against both Defendants. ECF No. 13. Normand contends the amendment is futile. ECF No. 16.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading *once* as a matter of course within: (1) 21 days after serving the pleading; or (2) 21

after service of a responsive pleading or a motion under rule as (b),(e), or (f). *See* Fed. R. Civ. P. 15(a); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Aguilar v. Texas Department of Criminal Justice*, 160 F. 3d 1052, 1053 (5th Cir. 1998), cert. den., 528 U.S. 851 (1999). Thereafter (for a second or subsequent pleading, or after 21 days), a party may amend its pleading *only* with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a). Joinder of additional defendants in an action also requires permission from the court, and the defendants must be involved in the same transaction or occurrence, with common questions of law or fact, as the originally named defendants. Fed. R. Civ. P. Rule 20.

Rule 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend is not automatic. The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The district court's ruling is reversible only for an abuse of discretion. *See Wimm*, 3 F.3d at 139.

Five factors must be considered in determining whether to deny a party leave to amend a complaint: (1) undue delay;[1] (2) bad faith or dilatory motive;[2] (3)

---

[1] Delay alone is an insufficient basis for denial of leave to amend. The delay must be *undue,* meaning it must prejudice the nonmoving party or impose unwarranted burdens on the court. *See Mayeaux v. Louisiana Health Serv. & Indemnity Co.*, 376 F.3d 420, 427 (5th Cir. 2004). If the delay in filing a motion for leave to amend is particularly egregious, the burden shifts to the moving party to demonstrate that the delay was "due to oversight, inadvertence or excusable neglect." *See Little*, 952 F.2d at 846 (citing *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981)).

4

repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party;³ and (5) futility of the amendment.⁴ *See Smith v. EMC Corp.*, 393 F.3d 590, 595–96 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003)); *see also Freeman v. Continental Gin Co.*, 381 F.3d 459, 468-69 (5th Cir. 1967). Absent these factors, leave to amend should be "freely given." *See Smith*, 393 F.3d at 595–96 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

A court must determine whether the proposed amendment: (1) merely proposes alternative legal theories for recovery on the same underlying facts; or (2) would fundamentally alter the nature of the case. *See Mayeaux*, 376 F.3d at 427. Amendments that fall into the former category generally should be permitted, as they advance Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities. Amendments that fall into the latter category, however, may be denied if the circumstances warrant. *See Mayeaux*, 376 F.3d at 427. "When

---

² A party's awareness of facts and failure to include them in the complaint might give rise to the inference that the party was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate. *See Wimm,* 3 F.3d at 141 (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir. 1981).

³ An amendment that is unduly prejudicial is one that is not merely clerical or corrective, but would establish an entirely new factual basis for the plaintiff's claims and, consequently, would require the parties to reopen discovery and alter their trial strategies. *See Little*, 952 F.2d at 846.

⁴ An amendment is futile where the amended complaint fails to state a claim upon which relief can be granted. *See Henry v. U.S., I.R.S.*, 2003 WL 23112853, at *3 (E.D. La. 2003) (citing *Stripling v. Jordan Production Co., L.L.C.*, 234 F.3d 863, 873 (5th Dir. 2000)). To determine futility, the district court should apply "the same standard of legal sufficiency as it applies under Rule 12(b)(6)." *See id.*

late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts [of appeal] are less likely to find an abuse of discretion due to the prejudice involved." *Id.*

Bates seeks to amend to add Lt. Cowan as a Defendant. Bates contends that, although he states in his original complaint that Lt. Cowan applied for and obtained a search warrant based on Normand's false statements, Bates did not then know that Lt. Cowan was aware that Normand's statements were false. Bates alleges that an unnamed eye-witness to the incident told him that Lt. Cowan was present during the entire incident and saw what Normand did. In other words, Bates contends Lt. Cowan was aware that Normand had lied in the search warrant affidavit. ECF No. 13.

Bates has not delayed in adding Lt. Cowan as a Defendant. Neither an answer nor a proposed plan of work have been filed. Lt. Cowan was included in Bates's original statement of the incident, although he was not named as a Defendant. ECF No. 1. The incident occurred on October 30, 2018 (ECF No. 5 at 2 ¶7); drug and gun charges against Bates were dismissed and Bates's money was released on January 10, 2019; according to Bates, the charge for resisting an officer was dismissed sometime thereafter; the original complaint was filed on January 9, 2020 (ECF No. 1); and the complaint was amended on February 28, 2020 (ECF No. 5). Bates apparently learned of Lt. Cowan's alleged complicity with Normand while preparing a brief in opposition to Normand's Motion to Dismiss, sometime in April 2020. ECF No. 13-1 at 2. Therefore, it is clear that Bates has not been dilatory or

delayed in adding Lt. Cowan as a Defendant. There is no apparent prejudice to Normand or Lt. Cowan from that amendment.[5]

Bates also seeks to add state law causes of action for battery and malicious prosecution. Because Bates had already alleged use of excessive force against him, the addition of a corresponding state law battery claim is not a surprise or prejudicial. Moreover, the addition of a state law malicious prosecution claim corresponds to Bates's Fourth Amendment claims that Normand fabricated evidence and lied on a search warrant affidavit.

Finally, Normand argues that amendment is futile because he has qualified immunity, which he raises in his Motion to Dismiss. That Motion will be denied as moot pursuant to Fed. R. Civ. P. 12(b), as set forth below.

Therefore, Bates's Motion to Amend (ECF No. 13) is GRANTED.

### C. Normand's Motion to Dismiss (ECF No. 9) is denied as moot.

Normand filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that: (1) he has qualified immunity; (2) Bates did not make any factual allegations as to use of excessive force in his first Amended Complaint; (3) there was probable cause to arrest Bates due to an active parole warrant; and (4) there was probable cause to conduct search Bates's father's home because there was reasonable suspicion to believe that Bates, a parolee, was engaging in criminal

---

[5] It is noted that Normand objects to the Amended Complaint on the basis of adding the state law causes of action, but makes no argument against adding Lt. Cowan as a Defendant. ECF No. 16.

activity. Normand maintains that he smelled marijuana when he approached Bates.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

In this case, Bates responded to Normand's Motion to Dismiss with a brief supported by substantive evidence. That evidence includes two affidavits from eyewitnesses to the incident, videos, and state court documents from the criminal proceedings instituted against Bates from the arrest, search, and seizure. ECF No. 12.

### 1. Bill of Sale

Bates produced a Bill of Sale showing the truck seized by the officers had been sold to Jose Castaneda on October 28, 2018. ECF No. 12-1.

### 2. Fabian White's affidavit

An affidavit from Fabian White ("White") (ECF No. 12-2) shows White was present at the home of Bates's father (McKinley Bates, Jr.), playing chess, when Normand and the officers arrived. White stated "some men" "ran out and handcuffed" White without identifying themselves as police officers. ECF No. 12-2. White states the officers did not state they had a search warrant or were there to execute a search warrant. ECF No. 12-2. White states he did not see any guns or drugs at the Bates residence; did not see Bates, Jr. or Bates III with guns or drugs; did not smell or see marijuana; and did not see Xanax pills or bars. ECF No. 12-2. White further states that Bates III does not live at his father's home, and that the guns taken from the home belonged to Bates, Jr. ECF No. 12-2. White heard Bates, Jr. identify himself to the officers and tell they the guns were his and not his son's. ECF No. 12-2.

### 3. Albert Lee's affidavit.

Bates also produced an affidavit from Albert Lee ("Lee"), an eye-witness to Bates's arrest. ECF No. 12-8. Lee states he saw the officers intentionally ram Bates's head into a fence post, one officer punched Bates with his fists "repeatedly," and Officer Lane punched bates in the head and body "man, many times," although Bates was not resisting. ECF No. 12-8. After beating Bates, the officers put him in a police car. ECF No. 12-8. Lee states he told the officer to stop jumping on and punching Bates, and ramming his head into the fence. ECF No. 12-8.

9

After placing Bates in the police car, one officer went to the house where Lee was staying and made an illegal, warrantless search. ECF No. 12-2. Lee contends the officer seized his prescription medication for Alprazolam (Xanax) and arrested him for drug possession, even as Lee showed the officer his prescription. ECF No. 12-2. Lee was put in jail for 7 days on the charge of illegal possession of Xanax before the charge was dismissed. ECF No. 12-2. Lee states that he did not see Bates in possession of or using any drugs, and did not see or smell marijuana, because Lee was down the street in his grandmother's yard. ECF No. 12-2. Lee states the same officer also went to Bates's father's home. Finally, Lee states that he was not beaten like Bates was. ECF No. 12-2.

### 4. Transcript of Bates's preliminary examination

Bates produced a certified transcript of Bates's December 19, 2019 preliminary examination in the Seventh Judicial District Court, Concordia Parish.[6] ECF No. 12-7.

Probation and parole officer Normand testified that, on the date of the incident, he was serving a West Baton Rouge Parish parole warrant on Bates. ECF No. 12-7 at 10. Normand testified that he had seen a car Bates had been known to drive and found Bates had a parole warrant. ECF No. 12-7 at 10. Normand and several deputies went to the residence where he has seen Bates' car, and found Bates, another "black male," and two children sitting in the carport at a picnic table. ECF No. 12-7 at 11.

---

[6] Bates's bond was also reduced in the event his parole-hold was dropped. ECF No. 12-7 at 49.

Normand testified that, when the officers arrived, Bates immediately stood up and saw Normand, who stated he was "probation and parole." ECF No. 12-7 at 11. Bates started to walk away, so Normand told Bates to stop." ECF No. 12-7 at 11. Bates then "reached in his pocket, pitched a clear plastic bag toward the door area of the house, and fled on foot." ECF No. 12-7 at 11. Normand pursued Bates for several blocks before he caught up with him. ECF No. 12-7 at 11. Normand testified that he gave Bates "several commands to get on the ground, show me your hands, which he refused." ECF No. 12-7 at 11. Normand then "decided to go hands on" and they "scuffled for a short time." ECF No. 12-7 at 11. Normand was unable to cuff Bates, because he kept resisting and trying to reach into his pocket, until Lt. Chris Groh arrived. ECF No. 12-7 at 12. After Bates was restrained, he was walked back to the house. ECF No. 12-7 at 13.

Normand testified that, after Bates was restrained, he determined that the vehicle Bates had been driving was registered to Bates, so he "checked" the car and found mail addressed to Bates as his father's residence. ECF No. 12-7 at 13, 24., The smell of marijuana in the vehicle was "overwhelming." ECF No. 12-7 at 13.

Normand then found the cellophane bag he had seen Bates throw down–it contained Xanax bars. Normand testified he also smelled marijuana coming from inside the house, although the door was not open, because it was "high grade" marijuana. ECF No. 12-7 at 14-15. Normand then decided to "clear the house for remaining occupants," and Bates, Jr. was escorted outside. ECF No. 12-7 at 14. Lt. Cowan them applied for a warrant to search "the rest of the house." The officers

11

found cash, several Xanax pills, and firearms–"drugs, money and guns." ECF 12-7 at 14. Normand testified they also found marijuana outside where Bates and the others had been sitting and some in "plain view" on a washing machine behind where they had been sitting. ECF No. 12-7 at 15. No weapons were found outside the home. ECF No. 12-7 at 25.

Normand testified that he searched the house because he believed Bates had been living there (he was on probation) and because he had found drugs outside. ECF No. 12-7 at 16. Normand testified that he found the Xanax bars "in plain view" prior to obtaining the search warrant. ECF No. 12-7 at 17. As a result of the search pursuant to the warrant, they found guns and cash inside the house. ECF No. 12-7 at 17.

Normand further testified that he did not turn the mail found in the car over to the District Attorney, but kept it in his office. ECF No. 12-7 at 18. Normand testified that mail showed Bates's address was at his father's house. ECF No. 12-7 at 18. Normand admitted he had not noted the dates on the mail he seized. ECF No. 12-7 at 19. Normand testified the mail was neatly in a "soft binder that flaps over and snaps," and was "just random different pieces of mail or letters" including checks, checkbooks, and various documents with Bates's name and address on it. ECF No. 12-7 at 29.

Normand testified that, as a probation and parole officer, he can enter a probationer's residence and search their rooms. ECF No. 12-7 at 19. Normand entered Bates Jr.'s home as a Probation and Parole officer, to clear the house after

12

he served the parole warrant. ECF No. 12-7 at 19. Normand testified that he did not go in to see Bates's room, did not know where the guns had been found, and did not know how many people occupied the residence. ECF No. 12-7 at 20.

Normand testified that, when he found the bag of Xanax bars, he picked them it up and did not know where he put it down again. ECF No. 12-7 at 20-21. Normand thought the pictures of the evidence were taken before he picked the bag up. ECF No. 12-7 at 21. After the pictures were taken, Normand picked up the bag, then put it back down (he thinks) and left it there until the Sheriff's Office took possession of it. ECF No. 12-7 at 22.

Normand then testified that he originally found the bag of Xanax bars in a bucket, and not on the ground as he testified earlier; Normand denied having testified he found it on the ground. ECF No. 12-7 at 22, 28. Normand testified that Bates threw the bag of bars out of his pocket and into the bucket. ECF NO. 12-7 at 22, 28.

Normand testified that he arrived at the Bates residence with Lt. Chris Groh, Agent Chad Fuqua, and Investigator Phillip Smith. Other officers arrived later. ECF No. 12-7 at 22. Normand was the only officer from Probation and Parole. ECF NO. 12-7 at 22. Normand was not wearing a body camera and did not know if anyone else had been. ECF No. 12-7 at 22-23.

Normand testified that he was not Bates's Probation and Parole officer at that time. ECF No. 12-7 at 24. Normand testified that an individual is assigned to Probation and Parole based on where they live, and that Bates's was assigned to

13

West Baton Rouge Parish. ECF No. 12-7 at 24. The parole warrant was issued by West Baton Rouge Parish; Normand did not determine why a warrant had been issued. ECF No. 12-7 at 26. Normand admitted the documents showed Bates' address was in Baton Rouge and not Ferriday. ECF No. 12-7 at 25. Normand testified that he never entered Bates, Jr.'s home to gather information as to whether or not Bates was actually residing there. ECF No. 12-7 at 25. No investigation as to where Bates was staying was conducted. ECF 12-7 at 25. Normand never saw Bates inside Bates, Jr.'s home. ECF No. 12-7 at 25.

McKinley Bates, Jr. (Bates's father) ("Bates, Jr.") testified that he lives at the address with his grandson, Tyrone Bates, and his fiancé, Ann Lewis, and they were living there on October 30, 2018 (the date of the incident). ECF No. 12-7 at 32. When the police arrived on October 30, 2018, Bates, Jr. was there with Fabian Lloyd ("Lloyd), Bates III, and his granddaughter. ECF No. 12-7 at 33. Albert Lee had visited him earlier in the day. ECF No. 12-7 at 36. Lloyd was sitting on the picnic bench outside, under the carport. ECF No. 12-7 at 33. Bates, Jr. testified that Bates III and Lloyd did not go inside that day. ECF No. 12-7 at 33. Bates III had not lived there for about ten years, and did not have a room in Bates, Jr.'s house. ECF No. 12-7 at 33-34, 41. When he was in Ferriday, Bates III sometimes stayed with his grandfather on Moose Lodge Road. ECF No. 12-7 at 34. That day, Bates III was in Ferriday for court the next day (ECF No. 12-7 at 34), and had stayed the night with his girlfriend (ECF No. 12-7 at 44). Bates, Jr. testified that

14

Bates III had lived in Baton Rouge, with Bates, Jr.'s niece, since he had gotten out of prison. ECF No. 12-7 at 35.

Bates, Jr. testified that Bates III left his home in 2007, when Bates III went to college at Grambling. Bates III was arrested and incarcerated "for marijuana" in 2010, while in college, and had lived in Baton Rouge since he was released from prison. ECF No. 12-7 at 41.

Bates, Jr. testified that he was asleep on his living room couch when the police arrived. He was not outside. ECF No. 12-7 at 35. Bates, Jr. was awakened when the police threw him on the floor and arrested him. ECF No. 12-7 at 35. Officer Cowan got the key to Bates, Jr.'s room, unlocked the door, and went in, while Bates, Jr. stayed on the floor for about thirty minutes. ECF No. 12-7 at 35. Officers asked Bates, Jr. what was in the house, and he told them he had guns locked up in his closet. ECF No. 12-7 at 35. The officers took the three guns. ECF No. 12-7 at 35-36. Bates, Jr. testified that no one else had access to the guns because they were locked up in the closet in his room and he had the key. ECF No. 12-7 at 37. Bates, Jr. stated that, although there were guns in his home, Bates III was outside the house. ECF No. 12- at 45.

Bates, Jr. testified that he kept a white bucket outside to pick up trash on the side of the road (and carry it to dump into a trashcan), and also had a silver trashcan outside. ECF No. 12-7 at 37. Bates, Jr. testified that, just prior to the police arriving, he had found a plastic bag on the ground under the carport and thrown it into the white bucket. ECF No. 12-7 at 39. He did not notice if there was

15

anything in it or what it was–he just picked the trash up from the ground and threw it into the bucket. ECF No. 12-7 at 40. Bates, Jr. testified that he has a phobia about trash and that if something is in the way, he throws it away. ECF No. 12-7 at 40. Bates customarily picked up trash under his carport and used a blower on the carport every other day. ECF No. 12-7 at 40, 42. Lloyd and Bates III were sitting outside when he picked the bag up. ECF No. 12-7 at 40. Bates, Jr. testified that Lloyd never left because the police took him away. ECF No. 12-7 at 41.

### 5. The videos from the carport security cameras

Bates filed three videos with his opposition to the Motion to Dismiss. The videos were from security camera Bates, Jr. had outside his home. Bates' videos show that, when he arrived at Bates, Jr.'s home, Normand and the other officers ran out of their vehicles with their gun drawn and pointed at the two men and two young children under the carport. ECF No. 12-3. The video also shows Bates III did not reach into his pocket, did not pull anything out of his pocket, and did not throw anything onto the carport floor or into a bucket. ECF No. 12-3.

However, the video shows Normand going through a white plastic bucket when there were no officers around, pulling everything out of it and then putting something into it and putting the things he had just pulled out back into it. ECF No. 12-6. Normand also removed everything from the top of the washing machine, throwing everything onto the ground as he went through it. ECF No. 12-6. From the video, it appears drugs were "found" in "plain view" after Normand removed everything from the top of the washing machine. ECF No. 12-6. Moreover, before

16

any of that occurred, a police officer was under the carport while Normand when through the three cars parked at the residence. The officer stood next to the bucket and the washing machine (the top of which was still stacked with Bates, Jr.'s things) for 20 to 30 minutes, setting his water bottle down on a corner of the washing machine. ECF No. 12-6. That officer did not search the bucket or the top of the washing machine, and it is apparent that he did not see any drugs in "plain view" on the washing machine, in the bucket, or on the table.

The video further shows the picnic table held only two cups, a chess game, and the chess set box when the officers arrived and when Bates III ran away.[7] ECF No. 12-3. Normand set several things down on the table, including his bag/fanny pack and water, and moved things around on the table. ECF NO. 12-5. The video also shows Normand removing papers from one of the cars and putting them into his bag/fanny pack. ECF No. 12-6.

### 6. The court minutes

Bates produced the (uncertified) January 10, 2019 minutes of the Seventh Judicial District Court, Concordia Parish, Division "A," which show Bates had been charged with: (1) possession of a schedule IV drug; (2) possession of marijuana; (3) possession of drug paraphernalia; (4) possession of a firearm by a convicted felon; and (5) resisting an officer. ECF No. 12-9. The court minutes further show that: Defendant waived any claim to half of the money seized ($9,555.), the money was

---

[7] Normand testified that he and the officers found marijuana outside where Bates and the others had been sitting [the picnic table] and in "plain view" on a washing machine behind where they had been sitting. ECF No. 12-7 at 15.

released to Bates's father, and the cell phone seized was released to Bates's brother, Kendall Bates. ECF No. 12-9. The court minutes show that all charges except for resisting an officer were dismissed on motion of the State. ECF No. 12-9.

### 7. The Motion to Dismiss should be denied as moot.

Normand contends there was a warrant from the parole office in West Baton Rouge Parish for Bates' arrest. Therefore, he has probable cause to arrest Bates. However, Bates was not arrested and sent to West Baton Rouge Parish. Instead, he was arrested, charged, and held on drug and firearms offenses, and with resisting arrest. Bates argues there was no probable cause to support the drug and firearms charges, that he was held in jail for and that Normand manufactured evidence against him. Bates's video evidence may support those assertions. Bates also contends Normand used excessive force against him, and that contention is supported by Albert Lee's affidavit.

Normand has had the opportunity to present evidence to the Court. He argues in his Motion to Dismiss is that he is entitled to qualified immunity and that Bates has failed to allege sufficient facts to state claims against Normand. However, Bates's evidence supports his claims.

In accordance with Fed. R. Civ. P. rule 12(b), since Bates's brief is accompanied by documentary evidence outside the pleadings which the Court has considered, Normand's Motion can no longer be considered a Motion to Dismiss. Therefore, dismissal of Normand's Motion to Dismiss as moot will afford all parties, including Cowan (after he is served and has filed a responsive pleading), an

opportunity to file Motions for Summary Judgment and/or oppositions thereto, supported by evidence.

### III. Conclusion

IT IS ORDERED that Bates's Motion to Amend/Correct Complaint (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that Normand's Motion to Dismiss (ECF No. 9) is DENIED AS MOOT. After service on and a responsive pleading from Lt. Cowan, the parties may file properly supported Motions for Summary Judgment and/or Oppositions, as appropriate.

SIGNED on Friday, February 26, 2021.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge