UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MCKINLEY BATES III | CASE NO. 20-cv-036 |
| -vs- | JUDGE DRELL |
| LANE NORMAND, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

RULING

Before the court is a motion for summary judgment filed by defendants Lane Normand ("Normand") and Cole Gralapp ("Gralapp") seeking dismissal of all claims contained in McKinley Bates' ("Bates") original, first amended, second amended, and third supplemental and amended complaints. (Doc.76).[1] Normand and Gralapp also assert the defense of qualified immunity. Because Defendants do not address all claims asserted against them,[2] we treat this motion as a motion for partial summary judgment. For the reasons expressed herein, the motion is GRANTED in part and DENIED in part.

I. Background

This lawsuit arises out of an incident that occurred on October 30, 2018 in Ferriday, Louisiana. On that day, Normand, a Louisiana State Probation and Parole officer, and John Cowan

---

[1] Also named as a defendant, but not joining in this motion for summary judgment, is John Cowan. All defendants are named in their individual and official capacities. "In § 1983 suits, government officials may be sued in either their individual or official capacities. A claim against a state or municipal official in his official capacity 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.' Individual or personal capacity suits 'seek to impose personal liability upon a government official for actions he takes under color of state law.'" Adams v. City of Shreveport, CV 15-2637, 2017 WL 3725206, *at 4 (W.D. La. Aug. 28, 2017) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

[2] Defendants do not specifically address Bates' state law claims nor punitive damages. Accordingly, those issues will not be addressed in this ruling.

("Cowan"), a lieutenant with the Concordia Parish Sheriff's Office ("Defendants"), as well as other Lieutenant Chris Groh ("Groh"), Investigator Phillip Smith ("Smith"), and Agent Chad Fuqua ("Fuqua"), executed a warrant for McKinley Bates III ("Bates") arrest.[3]

Prior to October 30, 2018, Normand and Cowan noticed Bates in Ferriday and noticed his car at his father's home. At the time, Bates was on parole for state offenses through the Louisiana Department of Corrections, Division of Probation and Parole ("Probation & Parole"), but neither Cowan nor Normand knew Bates' status until sometime on or about October 30, 2018, when Normand ran Bates' name through a database used by Probation & Parole. Normand's search revealed that on September 27, 2018, The State of Louisiana, Department of Public Safety and Corrections, Louisiana Board of Pardons/Committee on Parole issued a warrant for Bates' arrest because he violated his conditions of parole.[4]

Thereafter, Cowan and Normand discussed the need to execute two unrelated warrants: the first, a search warrant for the home of Albert Lee ("Lee") by the Concordia Parish Sheriff's Office, and the second being the Probation & Parole arrest warrant for Bates. Normand obtained consent from his supervisor, Todd Gray, to participate in the search at Lee's home.

Cowan, Groh, Smith, Fuqua, and Normand drove to Lee's home to execute that warrant with the understanding that, if time permitted, they would then look for Bates. The officers executed the search warrant at Lee's home and seized a plastic bag containing Xanax rods.[5] As the search concluded, Cowan told Normand to go to Bates' house with the other officers as it was

---

[3] Neither Groh, Smith, nor Fuqua are named as defendants in this lawsuit.
[4] Bates was placed on parole on December 26, 2015 after serving a sentence on state charges for possession with intent to distribute a controlled dangerous substance and illegal possession of weapons. Bates went to live with his sister in West Baton Rouge Parish and was being supervised out of that Louisiana Probation & Parole office. Although the warrant does not state the parole violation committed by Bates, it is uncontested that he was charged with absconding from West Baton Rouge Parish.
[5] The record is unclear what, if any, other items were seized at Lee's home.

in close proximity to Lee's home. Accordingly, Fuqua, Smith, Groh, and Normand drove to the home of McKinley Bates, Jr., father of McKinley Bates III, at 421 5th Street, Ferriday, Louisiana.

At this point in the chronology of events, the two parties' stories diverge significantly. In fact, even the evidence provided by Normand via an after-incident report and his deposition is in conflict.

According to Normand, the four officers exited the unmarked vehicle, drew their weapons when they saw Bates and another male sitting under the carport, and they announced themselves as "Probation and Parole." All of the officers wore "soft clothes" with the word "POLICE" on the front. As the officers exited their vehicle, Normand saw Bates throw something in the carport and begin running. He chased Bates a block or more before he finally caught him. According to Normand's deposition testimony, after he caught up with Bates, Bates stopped, and struggled such that Normand put a knee in his back, but Bates ultimately placed his own hands behind his back to be cuffed. Yet, according to Normand's incident report, Bates refused to comply with his instructions to get on the ground, so Normand used a straight arm bar take down to gain compliance. Further, the report states that Bates continued aggressively to resist arrest, so Normand applied a shoulder pin restraint. Normand still struggled to gain control of Bates. Groh approached to assist. Bates continued to ignore the orders of Normand and Groh, resulting in taser deployment by Groh. Bates was then placed under arrest, cuffed, and returned to the carport of his father's home.

Bates' version of events is that he and Fabian White ("White") were sitting under the carport with his daughter and nephew, when an unmarked car pulled up and men exited the vehicle with guns drawn. The men did not announce who they were, and nothing on their clothing identified them as police. Fearing for his safety, Bates ran. He continued to run until Normand

3

identified himself as law enforcement who was there to execute an arrest warrant. He then stopped, turned around with his hands above his shoulders, knelt on the ground, and submitted to the arrest. Bates claims that Normand then grabbed him by the arm and drove his head to the ground. Once Bates was handcuffed, Normand began punching him repeatedly about the head and back, stood Bates up, and then ran him into a fence pole before returning him to the carport of his father's home.

According to Normand, he asked whether anyone was in the house. Bates and White stated that Bates' father was inside. Accordingly, Normand entered the home to gather the father, McKinley Bates, Jr., whom he detained and brought outside to the carport. Normand also conducted a search of the carport and Bates III's car. Under the carport, he noticed marijuana in plain site on a picnic table and washing machine. He also recovered the plastic bag he saw Bates throw before fleeing and found that it contained numerous Xanax bars. In Bates' vehicle Normand found letters and bills addressed to Bates at 421 5th Street, Ferriday, Louisiana.

According to Bates, it was during this search of the carport that Normand fabricated evidence by placing the plastic bag of Xanax bars in a bucket found in the carport. Bates also contends that based on a protective sweep of the home and the false report to fellow officers that he located a bag of Xanax bars, Normand and the others were able to obtain a search warrant for the home. However, Cowan's affidavit complicates the factual recitation in that he noticed an "odor of marijuana that was coming from within the residence" and that the "odor of green unburnt marijuana was pungent." Based upon the probable cause statement and Cowan's request to investigate the marijuana smell, the state court in Concordia Parish issued a search warrant for 421 5th Street, Ferriday, Louisiana. During execution of that warrant, officers of the Concordia Parish Sheriff's Office ("CPSO") recovered $19,110.00, digital scales, vacuum seal bags, 2 marijuana

4

blunt roaches, a marijuana grinder, a Stevens .22 Cal. Rifle, a Hi Point Semi Auto .45ACP, and a Mossberg 16 ga Shotgun.

Bates was transported by CPSO to the Catahoula Parish Jail where he was booked and charged with a Probation & Parole hold violation, flight from an officer in violation of La. R.S. 14:108.1, resisting an officer in violation of La. R.S. 14:108, possession of a schedule IV drug with intent to distribute, felon in possession of firearms, carrying of weapons and possession of controlled dangerous substances, improper supervision of a minor child, possession of marijuana, and possession of drug paraphernalia. Ultimately, these charges were dropped by the Concordia Parish District Attorney but there is a dispute as to whether the charges were dropped as a result of a plea deal or because the DA recognized that Normand was fabricating evidence after the DA observed video of the events.

Bates filed the instant lawsuit on January 9, 2020 alleging that Normand used excessive force against him during the course of his arrest; planted evidence, namely a small plastic bag of Xanax pills, falsified the facts of his incident report to establish probable cause; and fed the false report to Cowan so they could obtain a search warrant and charge Bates with unwarranted crimes. Bates further alleges Cowan knowingly used Normand's falsified account of events to obtain the search warrant and execute an unlawful search of his father's home and that Gralapp failed to train Normand and had a custom, practice, or policy of allowing and encouraging probation officers to gain access to citizens homes without search warrants or probable cause.

II. <u>Summary Judgment Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if evidence is such that a reasonable jury could

return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is twofold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Id.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Liberty Lobby, 477 U.S. at 250. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Id. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to her, is sufficient to enable a reasonable jury to render a verdict in her favor. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986)). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations in the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

When ruling on a motion for summary judgment, it is improper for a court to make a credibility determination or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). A court must also view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. Clift v. Clift, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine dispute of material fact exists when the

evidence would allow for a reasonable trier of fact to return a verdict for the nonmovant. Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020) (citing Austin v. Kroger Tex., L.P., 864 F.3d 326, 328 (5th Cir. 2017)).

III.   Analysis - Section 1983 Claims

Defendants seek summary judgment as to several claims brought by Bates under § 1983: excessive force, unlawful search and seizure, supervisory liability, and fabricating evidence. Additionally, both Normand and Gralapp assert the defense of qualified immunity.

i.   Section 1983

42 U.S.C. § 1983 creates a cause of action for an individual whose constitutional rights are violated by a person acting under color of state or federal law.[6] Brown v. Miller, 519 F.3d 231, 236 (5th Cir. 2008). Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985). To assert a claim for damages under § 1983, a plaintiff must demonstrate: (1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir.2004).

ii.   Qualified Immunity

"The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231

---

[6] There is no dispute that Normand and Gralapp are both state actors as they were employed by the Louisiana State Department of Corrections, Division of Probation and Parole ("P&P"), both of which are state agencies. See La.R.S. § 36:401.

(2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests- the need to hold public official accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Grog v. Ramirez, 504 U.S. 551, 567 (2004) (KENNEDY, J, dissenting) (internal citation omitted).

Defendants are entitled to raise the defense of qualified immunity in their individual capacities only. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S 159, 166 (1985). ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."). Qualified immunity protects officers from liability for damages unless they violate clearly established law. [Q]ualified immunity changes the nature of the summary judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." Joseph on behalf of Est. of Joseph v. Bartlett, 981 F.3d 319, 329 (5th Cir.2020).

Ordinarily, the movant bears the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). However, the burden is shifted to the plaintiff when a qualified immunity defense is asserted by the defendant. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir.2005). To rebut the qualified immunity defense, the plaintiff must establish a genuine fact issue as to whether the defendant's alleged wrongful conduct violated a law that was clearly established at the time. Id.. The plaintiff must offer "more than mere allegations," although not necessarily "absolute proof," to rebut the

defense of qualified immunity. King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016). Although the burden rests with the plaintiff, all inferences are still drawn in his or her favor.

Courts apply a two-step test for determining whether an officer is entitled to qualified immunity. The court must first determine whether the facts pled, taken in the light most favorable to the plaintiff, show the government official's actions violated a constitutional right. Alexander v. City of Round Rock, 854 F.3d 298 (5th Cir. 2017) (citations omitted). The second inquiry is to determine if the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. If a defendant's actions violated a clearly established constitutional right, then the court must examine whether the actions were "objectively reasonable" in light of clearly established law at the time of the alleged events. Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir.2004). This is a question of law for the court, not a matter of fact for the jury Williams v. Bramer, 180 F.3d 699, 703 (5th Cir.2019). The plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed that his actions were proper. Babb v. Dorman, 33 F.3d 472, 477 (5th Cir.1994).

   iii. <u>Fourth Amendment Claims</u>

    1. <u>Excessive Force</u>

The Fourth Amendment is violated when an individual "suffers an injury that results directly and only from the officer's clearly excessive and objectively unreasonable use of force." Betts v. Brennan, 22 F.4th 577, 582 (5th Cir.2022 (quoting Joseph *ex rel.* v. Estate of Joseph v. Bartlett, 981 F.3d 319, 332 (5th Cir.2020)). To establish an excessive force claim under § 1983, a plaintiff must establish: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." Peterson v. Fort Worth, 588 F.3d 838, 846 (5th Cir. 2009). "The reasonableness inquiry in an excessive

9

force case is an objective one: the question is whether the [officer]'s actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 (quoting Scott v. U.S., 436 U.S. 128, 137-39) (1978)). Use of force claims are evaluated from the vantage point of a reasonable officer at the scene rather than 20/20 hindsight. Peterson, 588 F.3d at 846. Wilson v. City of Bastrop Through Cotton, 526 F.Supp.3d 170, 180 (W.D. La. March 17, 2021).

Defendants contend that Bates cannot establish an excessive force claim because he cannot establish an injury. In support, they point to Bates' own deposition testimony in which he states he didn't really suffer any physical injuries and his booking photograph taken on October 30, 2018 in which he does not appear to be injured. In response, Bates points to the deposition testimony of Albert Lee who claimed he saw injuries to Bates' face. Although Lee's testimony counters the Defendants' assertion, it does not create a genuine dispute as to whether Bates was physically injured. Bates' own testimony in conjunction with the photograph establishes that Bates did not suffer a physical injury.

Despite Bates inability to raise a genuine dispute as to whether he sustained a physical injury, he has established the possibility that he sustained a psychological injury. In his deposition, Bates stated that as a result of the events of October 30, 2018, he is paranoid when he sees police, has trouble sleeping, and no longer enjoys spending time with his children. His testimony is corroborated by his ex-girlfriend, Erina Love, whose testimony suggests that Bates is depressed. The Fifth Circuit has found that psychological injuries may support an excessive force claim, as long as they result from unreasonable excessive force. Flores v. City of Palacios, 381 F.3f 391, 398 (5th Cir. 2004) (citation omitted). As Defendants do not address, much less dispute, Bates' alleged psychological injury, we find that Bates has established an arguable injury resulting

directly from his interaction with law enforcement on October 30, 2018. We now turn to whether Normand used excessive force during Bates' arrest.

To determine whether the alleged use of force by Normand was excessive and unreasonable, we turn to the factors set out in Graham v. Connor, 490 U.S. 386 (1989). These factors are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether he was actively resisting arrest or attempting to evade arrest by flight. Id. at 396-97. The first factor, severity of the crime at issue, weighs in favor of Normand as he was attempting to execute a felony arrest warrant for absconding. As to the second factor, we cannot make a determination as neither party addresses what, if any, threat to safety Bates posed. Instead, the parties debate the third factor, whether Bates was actively resisting or attempting to evade arrest by flight.

There is no dispute that Bates ran from the garage upon Normand and the officers exiting their vehicle; however, the parties dispute why Bates fled. Bates claims he did not know they were police. He simply saw weapons and fled because he was scared. Bates' expert witness, Dr. John Peter, an expert in police tactics and use of force, opined that Bates' reaction was reasonable, particularly because the tactics employed by Normand led to an escalation of the situation. Defendants assert that Bates fled because he knew he was wanted for absconding from supervision. Also in dispute is whether Bates complied with orders once he realized the person chasing him was law enforcement or whether he continued to resist arrest once Normand caught up to him. Both parties have witnesses who corroborate their version of events. Accordingly, we cannot say in whose favor this factor weighs. That determination must be made by the fact finder.

Having determined that there is a genuine dispute as to whether Normand used excessive force, we look to the second prong of the qualified immunity analysis: Whether Normand's actions

were objectively reasonable in light of clearly established law at the time of the alleged misconduct. Viewing the evidence in a light most favorable to Bates and drawing all reasonable inferences in his favor, we cannot conclude on this conflicting evidence that Normand is entitled to qualified immunity as the law at the time of the incident was clearly established that (1) the degree of force an officer can use is reduced when a suspect is not resisting and (2) "a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest." Darden v. City of Ft. Worth, 880 F.3d 722, 731 (5th Cir. 2018) (citing Newman v. Guedry, 703 F.3d 757, 762-63 (5th Cir. 2012); Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008). If Bates' version of events is true, we doubt a jury would find that a reasonable officer would have believed that Bates was resisting arrest or that the use of force was anything but excessive.

2. Unreasonable Search and Seizure

Bates also asserts claims that Normand violated his right to be free from unreasonable searches and seizures when Normand conducted a protective sweep of his father's home, obtained a search warrant for the home based on false information, and searched his automobile. Bates contends that Normand should not have been able to conduct any searches. Because Bates agreement with Probation & Parole was for his assigned probation officer to conduct searches and Normand was not his assigned probation officer, the searches were unlawful. The conditions of parole which Bates signed on December 8, 2015 state in relevant part:

> I agree to visits at my residence or place of employment by my Parole Officer at any time. I also agree to searches of my person, property, residence, and/or vehicle, when reasonable suspicion exists that I am or have been engaged in criminal activity.

12

(Doc. 80-11, p.2). At the time that Bates signed this agreement as well as on October 30, 2018, La. R.S. 15:574.4.2(A)(2)(i), which sets forth the condition of parole and rules of conduct for parolees, stated the agreement was to visits at the parolee's residence or place of employment by "**the** probation or parole officer." Id. (Emphasis added). The courts interpreting this provision of the statute have found that "parolees are subject to searches pursuant to reasonable suspicion by more than just that parolee's supervising officer." State v. Warren, 2017-1169 (La.App.3 Cir. 2/28/2018), 239 So.3d 960, 971; State v. Spriggs, 18-651 (La.App. 5 Cir. 4/24/2018), 271 So.3d 320, 326 ("In 2017, La. R.S. 15:574.4.2 did not define the term 'probation or parole officer' or limit the authority for visits to a parolee's residence to the parolee's assigned parole officer."). Accordingly, as a probation and parole officer, Normand, could conduct warrantless searches if reasonable suspicion existed.

Bates claims his Fourth Amendment rights were violated when his car, the carport, and the inside of his father's home were conducted. We recognize federal and state constitutional protections against unreasonable searches[7] exist only when an individual has an actual expectation of privacy that society is prepared to recognize as reasonable. Katz v. U.S., 389 U.S. 347, 367 (1967); U.S. v. Knights, 534 U.S. 112 (2001); State v. Ragsdale, 381 So.2d 492, 497 (1980); State v Pounds, 2014-1063 (La.App.1st Cir. 3/9/15), 166 So.3d 1037, 1039, writ denied, 2015-0696 (La. 2/19/16), 186 So.3d 1173. However, those on probation possess a diminished expectation of privacy in such circumstances. See U.S. v. Taylor, 482 F.3d 315 (5th Cir. 2007); State v. Malone, 403 So.2d 1234, 1238 (1981); La.C.Cr.P. art. 895(A)(13)(a).[8] This reduced expectation of privacy

---

[7] These protections are afforded via the Fourth Amendment to the United States Constitution and Article I, §5 of the Louisiana Constitution.

[8] "A defendant on probation shall:...[a]gree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation or parole officer assigned to him or by any probation or parole officer who is subsequently assigned or directed by the Department of Public Safety and Corrections to supervise the person, whether the assignment or directive is temporary or permanent, with or without

is a result of a parolee's conviction and agreement to meet with a Probation & Parole officer and to allow P&P to investigate his activities and confirm he is complying with the provisions of his parole. State v. Carter, 485 So.2d 260, 262 (La. 3rd Cir. 1986); State v. Drane, 36,230, (La.App. 2 Cir. 9/18/02), 828 So.2d 107.

This case is akin to that examined by the Fifth Circuit in U.S. v. Taylor, 482 F.3d 315 (5th Cir. 2007) wherein the Court found that Taylor, a parolee, "was entitled to the same Fourth Amendment protections in his girlfriend's apartment that he would have received in his own home." Id. at 319.[9] However, the search in Taylor did not violate the Fourth Amendment because it was conducted pursuant to Taylor's supervised release conditions which allowed a search at any time. Taylor could only assert the rights he would have as the owner of the thing searched, and because he agreed to submit to searches of his home and vehicle when reasonable suspicion of criminal activity existed, he could not claim a heightened expectation of privacy in a home or vehicle he did not own.

Turning to whether a reasonable suspicion existed to search the premises and vehicle on October 30, 2018, we note that "[r]easonable suspicion requires no more than that the authority acting be able to point to specific and articulate facts that, taken together with the rational inferences from those facts, reasonably warrant a belief in the conclusion…that a condition of parole has been or is being violated." Scott, *supra*; Terry v. Ohio, 392 U.S. 1 (1968). "Reasonable suspicion is a low threshold, requiring that an official have 'some minimal level of objective justification.'" U.S. v. Castillo, 804 F.3d 361, 367 (5th Cir. 2015). Actions taken by an officer

---

a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity." Id.
[9] This analysis is not applicable to whether Bates' father's Fourth Amendment rights were violated as that question is not before the court. Bates cannot assert such a claim as Fourth Amendment rights are personal and his father is not a party to this action.

based on a reasonable suspicion are permissible even if the officer has made a good faith mistake of fact or law. Heien v. North Carolina, 574 U.S. 54, 65 (2014). Not only was Norman armed with an arrest warrant based on Bates' having violated his conditions of parole because he absconded from West Baton Parish, but the unrefuted evidence before the court is that the officers smelled the overwhelming odor of marijuana on the premises. This evidence was not only enough to establish a reasonable suspicion which would have allowed the officers to search the home, it was enough to establish probable cause. Because Bates agreed "to searches of my person, property, residence, and/or vehicle, when reasonable suspicion exists that I am or have been engaged in criminal activity," he could not assert any greater privacy interests when located at his father's home.

Accordingly, we do not find that the searches undertaken at 421 5th Street were unreasonable or violative to Bates' Fourth Amendment rights. These claims shall be dismissed.

### 3. Failure to Supervise

A "supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate 'when [the supervisory official] breaches a duty imposed by the state or local law, and this breach causes plaintiff's constitutional injury.'" Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998) (quoting Sims v. Adams, 537 F.2d 829, 831 (5th Cir. 1976)). Supervisory officials are not vicariously liable for constitutional violations caused by their subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Thus, for a defendant-supervisor to be held liable, he must either affirmatively participate in the acts causing the constitutional violation or implement the unconstitutional policies or fail to train his subordinates regarding what resulted in the violation.

Here, there are no allegations that Gralapp actively participated in the events of October 30, 2018. Thus, to be held liable as a supervisory official for the actions of his subordinates, Bates

must show: (1) Gralapp either failed to supervise or train Normand; (2) a causal link exists between the failure to train or supervise and the violation of Bate's rights; and (3) Gralapp's failure to train or supervise amounts to deliberate indifference. City of Canton v. Harris, 489 U.S. 378 (1989); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003); Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005); Smith, 158 F.3d at 911-12.

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011), (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997)); Porter v. Epps, 659 F.3d 440, 446-47 (5th Cir. 2011). "To establish a state actor disregarded a known or obvious consequence of his actions, there must be 'actual or constructive notice' 'that a particular omission in their training program causes … employees to violate citizens "constitutional rights" and the actor nevertheless "choose[s] to retain that program." Porter, 659 F.3d at 447 (quoting Connick, 563 U.S. at 61) (citing Bryan Cnty., 520 U.S. at 407). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."

Bates attempts to establish Gralapp's fault by arguing that he knew Normand had a history of entering homes without warrants under the pretext that he was there to meet with parolees. Bated points the court's attention to a complaint made to the Vidalia Police Department by Richard Brian Kemp, Sr. on September 27, 2018 (Doc. 80-18) wherein Mr. Kemp complains that "[o]n September 25, 2018…Officer Lane Normand entered my home without my permission while I was home alone and in the shower. Normand while in my home came into the bathroom where I

16

was showering and began questioning me about the whereabouts of my son."[10] This unverified complaint alone is insufficient to show Gralapp had notice of Normand's purported wrongful conduct. There is nothing in the record to suggest this complaint made its way from the Vidalia Police Department to Probation & Parole, much less the Gralapp's desk. Even if it had and was verified, this one complaint does not establish a pattern of constitutional violations.

Bates does not point to any deficiencies in Normand's training or specify how Gralapp failed to supervise Normand. Without more, there is simply no way Bates can carry his burden of proving supervisory liability. Accordingly, all claims against Gralapp must be dismissed.

    iv.    <u>Fourteenth Amendment Claim – Fabricated Evidence</u>

Bates contends that Normand violated his constitutional rights when he fabricated evidence, specifically, he "planted" a plastic bag of Xanax bars in a bucket found in the carport. Bates vehemently denies that the plastic bag of Xanax rods were his. He argues that during the search of Albert Lee's home, the officers recovered Xanax and Normand took some of that Xanax and "planted" it in the bucket found in the carport. In support, of his claims that Normand manufactured evidence, he points to video taken by a camera under the carport at his father's home.

The Fifth Circuit has found that a Fourteenth Amendment due process violation exists where a law enforcement officer intentionally fabricates evidence and uses it to frame and bring false charges against a person. <u>Cole v. Carson</u>, 802 F.3d 752 (5th Cir. 2015) (<u>Cole I</u>), cert. granted,

---

[10] Although the complaint appears to be more than one page, on which Kemp complains about prior conduct by Norman, that page is not provided as part of this exhibit.

judgment vacated sub nom. Hunter v. Cole, 137 S.Ct. 497 (2016) and opinion reinstated in part, 935 F.3d 444 (5th Cir. 2018 (*en banc*).[11]

Normand argues that he never fabricated evidence and that the video shows him returning evidence back to the bucket, not adding anything new. Normand also argues that the existence of the plastic bag in the bucket was confirmed by Bates' father who testified that he placed a bag in the bucket when he picked up trash but did not examine the contents.

We have reviewed the video evidence and it could support either party's version of events. In the video, Bates and Fabian White, are seen handcuffed and sitting on the bench of a picnic table. Several officers are in the carport. All step inside the home except for Normand. He walks up to a garbage can, lifts the lid, flashes a light into it, looks in, and then closes the lid. Normand then walks toward the door and looks up at the camera. He walks to an adjacent area that makes a corner. His back is to the camera and his actions are hidden from Bates and White. He picks up the plastic bucket and begins to pull things out of the bucket and then put items back into it using both hands. Because the view of his right arm is obscured it is not completely clear whether he has added to the contents of what was already in the bucket, nor is it evident that he was simply replacing items found in the bucket. Based on this evidence, there is a genuine question as to whether Normand was simply returning evidence to the bucket or adding the plastic bag of Xanax to enhance charges against Bates.

As it has been clearly established that it is a violation of someone's Fourteenth Amendment to fabricate evidence and that "no 'reasonable law enforcement officer would have thought it

---

[11] Although Cole I was vacated by the Supreme Court, the panel in Cole II reinstated the portion of the opinion regarding its theory on due process violations as a result of fabricating evidence. Accordingly, this remains binding Fifth Circuit precedent.

permissible to frame somebody for a crime he or she did not commit," Bates is not entitled to qualified immunity nor dismissal of this claim. Id. at 773. (Citation omitted).

IV. Conclusion

Based on the foregoing reasons, Defendants motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Normand is granted summary judgment and qualified immunity for Bates' Fourth Amendment claims of unreasonable search and seizure and Gralapp is grated summary judgment and qualified immunity for the claims brought against him. Those causes of action are DISMISSED WITH PREJUDICE. All other causes of action are reserved for trial, specifically, Bates' Fourth Amendment claim for excessive force, Fourteenth Amendment due process claim for fabricating evidence, potential federal claims for injunctive relief, state law claims for malicious prosecution and battery, and whether Bates is entitled to punitive damages.

THUS DONE AND SIGNED at Alexandria, Louisiana this 27th day of November 2023.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT